**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOSEPH'S HOUSE AND SHELTER, INC.,**

                                **Plaintiff,**

        v.                                                    **1:05-CV-757**
                                                              **(FJS/DRH)**
**CITY OF TROY, NEW YORK,**

                                **Defendant.**
_____

**APPEARANCES**                          **OF COUNSEL**

**DISABILITY ADVOCATES, INC.**           **CLIFF ZUCKER, ESQ.**
5 Clinton Square, Third Floor            **SIMEON L. GOLDMAN, ESQ.**
Albany, New York 12207
Attorneys for Plaintiff

**MORITT HOCK HAMROFF &**                **ROBERT L. SCHONFELD, ESQ.**
**HOROWITZ LLP**
400 Garden City Plaza, Suite 202
Garden City, New York 11530
Attorneys for Plaintiff

**CITY OF TROY CORPORATION**             **CHARLES A. SARRIS, ESQ.**
**COUNSEL**
One Monument Square
Troy, New York 12180
Attorneys for Defendants

**DREYER BOYAJIAN LLP**                  **JOHN B. CASEY, ESQ.**
75 Columbia Street
Albany, New York 12210
Attorneys for Defendants



**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

## I.  INTRODUCTION

On June 16, 2005, Plaintiff Joseph's House and Shelter, Inc. filed this action, under (1) § 1983 and the First Amendment; (2) the Federal Fair Housing Act ("FHA"), 42 U.S.C. § 3617; and (3) Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203, asserting claims for retaliation against Defendant City of Troy, New York ("City") based on Defendant City's failure to grant Plaintiff federal Emergency Shelter Grant ("ESG") funds after Plaintiff filed a discrimination suit under the FHA and ADA against Defendant City's Planning Board.

Currently before the Court is Defendant City's motion for summary judgment on the grounds of legislative immunity and privilege, failure to establish prima facie retaliation, and the presence of a legitimate non-retaliatory reason for the City Council's enactment of an ordinance not granting ESG funding to Plaintiff.

## II.  BACKGROUND

On March 25, 2005, Defendant City, through its Department of Planning and Community Development ("Planning Department"), issued a request for proposals seeking applicants for federal Housing and Urban Development ("HUD") funding, including ESG funding, for the 2005-2006 One Year Action Plan.  On April 11, 2005, Plaintiff submitted an application for ESG funding in the amount of $34,001.00.

The Planning Department received applications for ESG funding from various entities totaling $179,796.00.  On April 13, 2005, the Planning Department and the Mayor recommended funding for the ESG applications; their recommendations included $22,724.00 for Plaintiff.

On April 27, 2005, Plaintiff filed a federal lawsuit in this District, No. 05-CV-513, against the City of Troy Planning Board alleging discrimination relating to a building project in violation of the FHA and the ADA.[1] On May 31, 2005, the Troy City Council ("City Council") held a public workshop meeting to review the ESG funding applications and recommendations. On June 2, 2005, the City Council voted unanimously (9-0) to amend the Planning Department and Mayor's recommendations and voted (8-1) to adopt the amended Action Plan that did not include ESG funding for Plaintiff.[2]

## III. DISCUSSION

### A.    Legislative immunity

Defendant asserts that the doctrine of legislative immunity bars this action because Plaintiff's claims are based on the City Council's protected legislative activity. Although legislators *sued in their personal capacity* are entitled to absolute immunity for their legislative activities, the immunity does not extend to suits in their official capacities, i.e., "municipalities have no immunity defense, either qualified or absolute, in a suit under § 1983." *Morris v. Lindau*, 196 F.3d 102, 111 (2d Cir. 1999) (citation omitted); *see also State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 86 (2d Cir. 2007) ("[T]he Supreme Court

_____

[1] This case is still pending before this Court.

[2] The City Council awarded funds to Bethany Hospitality Center - Soup Kitchen, Unity House of Troy, Inc. - Domestic Violence Shelter, and the Salvation Army, which were not part of the Planning Department and Mayor's recommendations. The City Council also reduced the funding for Troy United Area Ministries - Furniture Program and T.R.I.P., Inc. - Security Deposit and Rent Assistance. Plaintiff was the only applicant that the Planning Department and Mayor recommended whose funding was completely eliminated.

has made clear that, due to the historical unavailability of various immunity defenses to local

governments, those governments (or "municipal corporations") are not entitled to the benefit of

any immunities that might be available to local officials sued under § 1983." (citations omitted));

*LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 428 (2d Cir. 1995) (discussing legislative immunity

in the context of an FHA claim).

Plaintiff has sued a municipality, Defendant City, and not the individual members of the

City Council.  Accordingly, the Court finds that Defendant City is not entitled to assert the

legislative immunity of its city council members as a bar to the claim against it.  Despite

Defendant's claim that Plaintiff is circumventing the law of immunity by suing Defendant City

rather than the city council members, lawsuits against municipalities are permissible even where

individual government actors may have access to an immunity defense.  *See LeBlanc-Sternberg*,

67 F.3d at 428 (finding a jury verdict holding against a municipality and for individual

defendants on an FHA claim consistent where the jury was given an instruction regarding

legislative immunity).

## B.    Legislative privilege

Defendant asserts that legislative privilege protects the City Council members from

having to testify regarding any retaliatory intent or having to justify their actions to an

unsuccessful applicant.  Accordingly, Defendant contends that, because Plaintiff's action is based

entirely upon privileged conduct and motivations, the Court should dismiss the action.

Local legislators are entitled to a legislative privilege[3] protecting against questions regarding their subjective motivations, deliberations, and thought processes regarding their legislative function. *See Orange v. County of Suffolk*, 855 F. Supp. 620, 623 (E.D.N.Y. 1994). However, the Second Circuit has rejected Defendant's argument that the legislator's privilege requires municipal immunity from suit. *See Goldberg v. Town of Rocky Hill*, 973 F.2d 70, 74-75 (2d Cir. 1992) (citing federal cases where the motive and purpose of legislators are at issue).

Accordingly, the Court finds that the assertion of legislative privilege does not bar Plaintiff's claims; however, the privilege may generate evidentiary issues in this action.

## C.    FHA and ADA claims

The FHA and ADA both provide for retaliation claims governed by the *McDonnell Douglas* burden shifting rules. *See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown* ("*RECAP*"), 294 F.3d 35, 53-54 (2d Cir. 2002). The plaintiff must establish a *prima facie* case of retaliation by showing (1) that the plaintiff was "engaged in a protected activity;" (2) "that the [defendant] was aware of this activity;" (3) "that the [defendant] took adverse action against the plaintiff;" and (4) that "a causal connection exists between the protected activity and

---

[3] The legislative privilege is not absolute but is qualified by balancing legitimate interests on both sides, including the following factors:

> "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable."

*Rodriguez v. Pataki*, 293 F. Supp. 2d 302, 304 (S.D.N.Y. 2003) (quotation omitted).

the adverse action . . . ."  *Id*. at 54 (quotation and other citations omitted).  Under the *McDonnell*

*Douglas* analysis, the plaintiff's *prima facie* burden is "minimal" and "*de minimis*."  *Woodman v.*

*WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) (citation omitted).


### 1. Prima facie case

#### a. Protected activity

Defendant does not contest that Plaintiff engaged in protected activity by filing its

lawsuit against the Troy Planning Board.


#### b. Defendant's knowledge of Plaintiff's activity

In a May 5, 2005 *Albany Times-Union* article, Councilwoman Collier was cited as having

an "angry" reaction to the lawsuit.  *See* Affidavit of Simeon Goldman, dated March 27, 2007

("Goldman Aff."), Exhibit E.  Furthermore Council President DerGurahian was also quoted in a

separate *Albany Times-Union* article, published June 3, 2005, stating that the lawsuit may have

influenced members of the City Council.[4]  *See* Goldman Aff., Exhibit D.[5]  The Court finds that

---

[4] Plaintiff also cites council members' deposition testimony, regarding their awareness of the lawsuit while deliberating, that may or may not be protected by the legislative privilege.  As the Court does not need this testimony to make its finding on this issue, the Court need not determine whether or not Defendant properly asserted legislative privilege or whether or not that privilege has been waived.

[5] Defendant counters that there is no evidence of the specific claims of the lawsuit. However, Plaintiff's lawsuit is protected under Plaintiff's First Amendment claim regardless of whether the City Council knew that the lawsuit contained an FHA and ADA claim.  *See Dougherty v. Town of N. Hempstead*, 282 F.3d 83, 91 (2d Cir. 2002) (finding lawsuit constitutionally protected activity under the First Amendment).  The parties did not otherwise address Plaintiff's First Amendment claim.

these facts are sufficient for Plaintiff to meet its *de minimis* burden to show that the City Council

was aware of Plaintiff's protected activity.


### c. Adverse action

Under the FHA, an adverse action must "'coerce, intimidate, threaten, or interfere with'

the party." *Marks v. BLDG Mgt. Co., Inc.*, No. 99 CIV. 5733, 2002 WL 764473, *11 (S.D.N.Y.

Apr. 26, 2002) (quotation and other citation omitted).  An otherwise voluntary decision may be

an adverse action if taken for retaliatory reasons. *See id.* (citing *Walker* [*v. City of Lakewood*,]

272 F.3d [1114,] 1126 [(9th Cir. 2001)]).  However, adverse "action must have some materially

adverse effect on the plaintiff . . . ." *Id.* at *13 (citations omitted).  Although Defendant's

allocation of ESG funding was completely discretionary, the Court finds that its decision not to

fund Plaintiff may constitute an adverse action if Defendant City made this decision for

retaliatory reasons and that decision had a materially adverse effect on Plaintiff.  Plaintiff claims

that the loss of funding resulted in the elimination of a counselor position, a reduction in

caseload, and the loss of services to homeless families seeking permanent housing. *See* Affidavit

of Tracy Neitzel, dated March 27, 2007 ("Neitzel Aff."), at ¶ 13.  The Court finds that Plaintiff's

evidence from the newspaper articles, discussed above, is sufficient to meet its minimal burden

here to show retaliatory intent.  Furthermore, the Court finds Plaintiff's evidence regarding the

results of the loss of funding is sufficient to meet its *de minimis* burden to show that the lack of

funding had a  materially adverse effect.

### d. Causal connection

"'The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'" *RECAP*, 294 F.3d at 54 (quotation omitted). The adverse action need not occur immediately following the protected activity, and there is no bright line outer limit to the time; the inquiry is whether a reasonable juror could conclude that the action was taken because of the protected activity. *See id.* (quotation omitted). Here, the mayor and Planning Department recommended funding for Plaintiff on April 13, 2005. *See* Defendant's Statement of Material Facts at ¶ 10. Plaintiff undertook protected activity by filing its lawsuit against the Troy Planning Board on April 27, 2005. *See* Neitzel Aff. at ¶ 8. Defendant took the alleged adverse action on June 2, 2005. *See id.* at ¶ 11. The Court finds that a reasonable juror, based on the time-line and the newspaper quotes discussed previously, could conclude that the City Council made its decision to amend the Planning Department and the Mayor's recommendations and not fund Plaintiff due to Plaintiff's protected activity.

Accordingly, the Court finds that Plaintiff has established a *prima facie* case of retaliation.

### 2. Legitimate reason or pretext

If a plaintiff establishes a *prima facie* case, the defendant has the burden to produce a legitimate non-retaliatory reason for its action. *See RECAP*, 294 F.3d at 54. Defendant has articulated several legitimate non-retaliatory reasons for its funding decision including, among other reasons, Plaintiff's organizational strength, Plaintiff's ability to obtain other funding, and

the City Council's desire to fund other projects.[6]  *See* Defendant's Memorandum of Law at 11-12.

If the defendant meets its burden of production, the burden of persuasion shifts back to the plaintiff to show that the defendant's proffered reason is not worthy of credence or that the reason is mere pretext for a retaliatory action.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).  In this analysis, the court may consider the plaintiff's *prima facie* evidence and proper inferences from such evidence.  *See id*.

Defendant only offers one reason for its decision that is supported by evidence that Defendant does not claim is protected by legislative privilege; that reason is Plaintiff's failure to appear and lobby at a workshop meeting.[7]  The Court finds that Plaintiff's evidence, including the timing of the amendment of the ESG funding plan and the newspaper articles, is sufficient to establish a genuine issue of material fact regarding whether Defendant's funding decision was

---

[6] The Court notes that Defendant's support for these reasons consists entirely of deposition testimony that Defendant claims is protected by the legislative privilege.  If Defendant decides to maintain the privilege (and has not waived it), the failure to offer evidentiary support could lead a reasonable juror to conclude that Defendant has cited these reasons to obscure a retaliatory motive.  *See RECAP*, 294 F.3d at 54-55.  Defendant also refers to several other reasons, all of which it claims are privileged.

[7] Defendant cites deposition testimony taken "without waiving privilege" to support its reasons for its action and argues that "the privileged testimony shows . . . ."  *See* Defendant's Memorandum of Law at 11-12.  Plaintiff, arguing that such use of the deposition testimony constitutes a waiver of the privilege by Defendant, cites similarly "privileged" deposition testimony regarding the council members' motivations and deliberations.  *See* Plaintiff's Memorandum of Law at 13.  Of the nine City Council members, seven were deposed and six of them claimed legislative privilege; Councilwoman Collier was the only Council Member who was deposed who did not invoke the privilege.  The other two former members of the City Council submitted affidavits saying they had no recollection of the vote.  *See* Defendant's Memorandum of Law at 5-6.  Since the Court can resolve this motion without determining whether the deposition testimony cited is subject to the privilege, whether the qualified privilege protects the evidence, or whether Defendant has waived the privilege, the Court need not address these issues.

retaliatory in nature.

## IV.  CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the

applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant's motion for summary judgment is **DENIED**; and the Court

further

**ORDERS** that Plaintiff's counsel shall initiate a telephone conference, using a

professional conferencing service, with the Court and opposing counsel on **February 24, 2009** at

**10:00 a.m.** to set a trial date.


**IT IS SO ORDERED.**


Dated: February 5, 2009
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge